IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADVOCACY CENTER et al. | * | 02:10-cv-01088-SSV-DEK |
| | * | |
| Plaintiffs, | * | |
| | * | JUDGE VANCE |
| VS. | * | |
| | * | |
| LOUISIANA DEPARTMENT OF | * | MAGISTRATE JUDGE |
| HEALTH AND HOSPITALS, ,et al. | * | WILKINSON |
| | * | |
| Defendants. | * | |

**CONSENT DECREE**

**I. Introduction**:

Plaintiffs Advocacy Center and W.B., a minor, through his mother and next friend Charrie Butler ("Plaintiffs") filed this action on April 12, 2010, against Defendants Louisiana Department of Health and Hospitals ("DHH"), Alan Levine, Mark Anders, and Michelle Duncan ("Individual Defendants,"[1] and with DHH, "Defendants"). Plaintiffs alleged that Defendants have refused and are continuing to refuse to accept promptly physical custody of individuals who have been found to lack the mental capacity to proceed to trial and have been remanded to the custody of the Feliciana Forensic Facility pursuant to Art. 648, Louisiana Code of Criminal Procedure (such individuals hereafter referred to as "Incompetent Detainees"). Plaintiffs alleged that Defendants' refusal to accept physical custody has resulted and is resulting in prolonged and unconstitutional confinement of such Incompetent Detainees in parish jails, in violation of their right to due process under the United States Constitution. Defendants moved to dismiss Plaintiffs' complaint on several grounds. Plaintiffs moved for a

---

[1] The Individual Defendants were sued in their official capacities only. Since this case was filed, Bruce Greenstein has succeeded Alan Levine as Secretary of DHH, and has been substituted as a party.

1

preliminary injunction on May 27, 2010, requesting that the Court order Defendants to accept physical custody of plaintiff W.B. within seven days, and accept physical custody of other Incompetent Detainees at Feliciana within a reasonable period of time, not to exceed thirty days from the date they are committed to Feliciana for restorative treatment, and for other appropriate relief. A hearing on the motions for a preliminary injunction and to dismiss was held on June 22, 2010.

Defendants accepted physical custody of W.B. on May 27, 2010.

The Court entered orders denying the motion to dismiss and granting in part and denying in part the preliminary injunction on August 9, 2010, requiring DHH: (1) to admit within 21 days all Incompetent Detainees whose paperwork was complete, (2) to complete paperwork within 10 days on other detainees who have been ordered admitted to Feliciana, and (3) to admit all future detainees ordered to Feliciana within 21 days. Defendants filed a notice of appeal and moved to stay the order pending appeal or, in the alternative, for an extension of time to implement the Court's order to transfer incompetent detainees to Feliciana Forensic Facility. On August 27, 2010, the Court denied the motion for stay, but granted Defendants' motion to extend the deadlines for admitting Incompetent Detainees to Feliciana, and ordered further relief.

The parties mutually desire to settle all of the claims asserted by the Plaintiffs without the need for further litigation and have therefore agreed to enter this Consent Decree.

**II. Definitions**:

1. <u>Incompetent Detainee</u>: a person who has been found to lack the mental capacity to proceed to trial, is being held in jail, and has been remanded to the custody of the

Feliciana Forensic Facility pursuant to Art. 648, Louisiana Code of Criminal Procedure.

2. <u>Sanity Commission</u>: a commission appointed by a State court pursuant to Art. 644 of the Louisiana Code of Criminal Procedure to examine a criminal defendant whose mental capacity to proceed to trial is in question, and to make findings concerning his competency to proceed to trial.

3. <u>Order for Inpatient Treatment</u>: an order issued pursuant to Art. 648(A)(2)(a) of the Louisiana Code of Criminal Procedure committing the detainee to Feliciana Forensic Facility.

4. <u>Sanity Commission Report</u>: A report prepared by the Sanity Commission and submitted to the Court.

5. <u>Feliciana Forensic Facility</u>: The forensic unit at East Louisiana State Hospital designated by L.R.S. 28:25.1 and any other forensic facility operated by Defendants to which Incompetent Detainees may be committed by an Order for Inpatient Treatment.

6. <u>Jail</u>: A Parish detention facility in which an Incompetent Detainee is held pending admission to Feliciana or Feliciana-NO.

7. <u>District Forensic Coordinator (DFC)</u>: a mental health professional employed by the Department of Health and Hospitals with at least a master's degree in social work, psychology or related field, such as counseling or nursing, and who has been trained by and is under the active supervision of the Medical Director of Defendant's Forensic Program or other Board-certified forensic psychiatrist.

8. <u>Behavioral Health Assessment</u>: a face-to-face assessment by a psychiatrist,

licensed psychologist, or District Forensic Coordinator for mental illness and addiction problems, using the Brief Psychiatric Rating Scale (BPRS) for mental health symptoms and the CAGE-AID for substance abuse issues. Also included in the term "Behavioral Health Assessment" is a review of any sanity commission report; medical and mental health history, if available; jail medical and mental health records; and assessment of other factors bearing on the acuity of the Incompetent Detainee's need for mental health and substance abuse treatment, including whether the Incompetent Detainee is receiving medication, whether the Incompetent Detainee is compliant with his or her medication, efficacy and side effects of medication, physical health needs, and extent to which he or she has received jail-based competency restoration services. The Behavioral Health Assessment will result in a determination as to whether an Incompetent Detainee is an Incompetent Detainee with Emergency Mental Health Needs, an Incompetent Detainee with Major Mental Health Needs, or an Other Incompetent Detainee, all as defined below. If the Behavioral Health Assessment is conducted by a DFC as opposed to a psychiatrist or psychologist, the DFC must consult with Forensic Program Medical Director to interpret the results of the Behavioral Health Assessment in order to determine if the client needs emergency services, services for major mental health needs or services for incompetent detainees.  (See Nos. 9, 10, and 11 below)

9. <u>Incompetent Detainee with Emergency Mental Health Needs</u>: an Incompetent Detainee who has a BPRS total score that is 50 or greater, or who is determined by the Forensic Program Medical Director, based on a Behavioral Health

Assessment, to need immediate hospital treatment.

10. <u>Incompetent Detainee with Major Mental Health Needs</u>: an Incompetent Detainee who is not an Incompetent Detainee with Emergency Mental Health needs and who has a BPRS score of 45 or greater; who has a score of 6 or 7 on the Resistance Scale; or who is determined by the Forensic Program Medical Director based on a Behavioral Health Assessment, to need inpatient care within ten (10) days of assessment for either successful restoration to competency to proceed to trial or for other reasons.

11. <u>Other Incompetent Detainee</u>: an Incompetent Detainee who is not an Incompetent Detainee with Emergency Mental Health Needs or an Incompetent Detainee with Major Mental Health Needs.

12. <u>Brief Psychiatric Rating Scale (BPRS):</u> a standardized 24-item psychiatric rating scale used to rate psychiatric symptoms and behaviors. The BPRS comprises 24 items that can be rated from not present (1) to extremely severe (7).

13. <u>Resistance Scale</u>: A subscale of the BPRS, composed of a combination of questions relating to issues of "hostility", "suspiciousness" and "uncooperativeness". The scoring on the scale is a result of the severity of the symptoms displayed by the patient in response to each question. The scoring is ultimately dependent on the interpretation of the evaluating doctor. A score of 6 or 7 in any one of the three areas, upon review of the evaluating doctor, may result in a finding of Major Mental Health Needs.

14. <u>CAGE-AID questionnaire</u>: a brief standardized questionnaire that is a widely used method of screening for alcoholism, adapted to include other types of substance

abuse (drugs).

15. <u>Diversion from the waiting list</u>: Release from jail, less restrictive placement in the community, or restoration to competency.

**III. Actions Required of Defendants**:

1. Defendant shall maintain an updated summary or list of all persons who are Incompetent Detainees on or after the date of the entry of this Consent Decree. The summary or list shall include, for each Incompetent Detainee:

    a. The Incompetent Detainee's name and docket number.

    b. The court that entered the Order for Inpatient Treatment.

    c. The date of the Incompetent Detainee's Order for Inpatient Treatment.

    d. The date that DHH was notified of the Order for Inpatient Treatment.

    e. The jail or other facility in which the Incompetent Detainee is being held.

    f. The status of any paperwork that must be completed prior to admission to FFF.

    g. The dates of behavioral health assessments, the name of the person making the assessment, the name of the physician with whom the person making the assessment consulted, a list of the documents that were reviewed in connection with the assessment, and the results of the assessment, including the scores on tests that were administered.

    h. The date(s) and nature of all notifications by jail personnel to DHH of emergency mental health related incidents involving the Incompetent Detainee, and date(s) of any admission of the Incompetent Detainee for emergency mental health treatment.

    i. The date of admission to FFF.

      j. Date of removal from list due to diversion and reasons for removal, and

      k. Names and dates of DFC's contact with pretrial detainees.

2. Defendants shall take action to assure that court orders committing patients to FFF are being transmitted promptly by the committing court to FFF. Defendants will follow up as necessary.

3. Defendants shall take prompt action, after receiving notification of an Order for Inpatient Treatment, to insure the completion and/or assembly of all necessary paperwork for an Incompetent Detainee's admission to FFF.

4. By July 10, 2011, Defendants shall insure that the wait-time for admission to FFF of each Incompetent Detainee is no more than 30 days following the Order for Inpatient Treatment.

5. From the date of the entry of this Consent Decree by the Court through July 9, 2011, Defendants shall insure that the wait-time for admission to FFF of each Incompetent Detainee is no more than 45 days following the Order for Inpatient Treatment.

6. In addition, by April 11, 2011, Defendants shall insure that all Incompetent Detainees receive a Behavioral Health Assessment, as defined above, within five (5) days of notification of an order for inpatient treatment. Defendants shall provide all Incompetent Detainees with jail-based competency restoration services. DFCs shall administer the Georgia Court Competency Test (GCCT) to each Incompetent Detainee to help determine areas of client deficiencies. DFCs will provide competency restoration to those who are not competent to stand trial using the ELMHS competency manual. Each Incompetent Detainee will receive individual face-to-face competency

restoration services from a DFC or a psychologist at least two times per week.

7. Within thirty (30) days of the effective date of the Consent Decree, Defendants shall establish and publicize to the Court and to each sheriff or other personnel responsible for jails in which an Incompetent Detainee is held, or may be held now or in the future, an effective procedure whereby jail personnel may notify Defendants of emergency mental health related incidents involving Incompetent Detainees.

8. Defendants shall insure that Incompetent Detainees have access to needed emergency mental health care, which will be as follows:

    a) Jail personnel call Director of CFS to report an emergency,

    b) The report of an emergency shall include:

        (1) A description of the factors that substantiate the emergency.

    (c) Within 24 hours of the report of an emergency to the Director of CFS or his designee, the ELMHS Chief of Staff or his Designee will make the determination as to whether there is an actual emergency, and whether to admit or make further assessment.

9. Within thirty (30) days of the effective date of the Consent Decree, Defendants shall insure that, upon notification by any jail personnel of an emergency mental health incident involving an Incompetent Detainee, that the emergency protocol set forth in Section 7 above will be implemented.

10. By July 10, 2011, Defendants shall insure that all Incompetent Detainees with Emergency Mental Health Needs are admitted to Feliciana within two (2) working days following completion of a Behavioral Health Assessment.

11. By July 10, 2011, Defendants shall insure that all Incompetent Detainees with

Major Mental Health Needs are admitted to Feliciana within ten (10) working days following completion of a Behavioral Health Assessment.

12. By July 10, 2011, Defendants shall ensure that all Other Incompetent Detainees are admitted to FFF within thirty (30) days of the Order for Inpatient Treatment.

**IV. Reporting provisions**:

1. Defendants shall submit a report to the Court and Plaintiffs' counsel on the first working day of each month following July 10, 2011. Such report shall contain the information set forth in Part III (1) above and the number of Incompetent Detainees (by gender and facility to which admitted).

**2.** These reporting provisions shall terminate two (2) years following July 10, 2011, provided that Defendants have substantially complied during that time.

**V. Enforcement**:

This consent decree represents the entire agreement between the parties and it may only be enforced by the parties to this agreement.

**VI. Miscellaneous**:

1. This Consent Decree is a settlement of disputed claims and shall not be considered to be an admission of liability by any party.

2. This Court shall retain jurisdiction to enforce this Consent Decree until this matter is dismissed. The matter shall be dismissed following three years from July 10, 2011, provided that Defendants have substantially complied during that time.

3. This Consent Decree renders moot Defendants' appeal of the denial of their motion to dismiss and of the preliminary injunction previously entered in this case, and Defendants agree to dismiss that appeal. In consideration of Defendants'

dismissal of their appeal, Plaintiffs agree to accept $260,000.00 (two hundred sixty thousand dollars) as attorneys' fees and costs in this matter, which shall be the full and final amount for work done to and including the date of entry of this Decree. Defendants are ordered to pay this amount to Plaintiffs within ninety days from the date that this Decree is signed by counsel for the Department of Health and Hospitals.

4. Each party to this Consent Decree was assisted by counsel, understands the meaning and consequences of the Consent Decree, and executes the Consent Decree of his, her, its, or their own free will.

5. Each party to this Consent Decree has cooperated in the preparation and drafting of this Consent Decree. Accordingly, the Consent Decree shall not be construed more strictly against any party than it is against any other party.

SO ORDERED this ___12th___ day of ___April___, 2011, in New Orleans, Louisiana.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

Approved:

___/s/ Katie Schwartzmann___
**Katie Schwartzmann, Bar No. 30295**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
P.O. Box 56157
New Orleans, LA 70156
Telephone: (504) 592–8056
Facsimile: (888) 534–2996
E-mail: kschwartzmann@laaclu.org
E-mail: bgerharz@laaclu.org

/s/ Nell Hahn
**Nell Hahn, Bar Number 22406**
ADVOCACY CENTER OF LOUISIANA
600 Jefferson Street, Suite 812
Lafayette, LA 70501
Telephone: (337) 237–7380, ext. 11
Facsimile: (337) 205-6166
E-mail: nhahn@advocacyla.org


/s/ Marjorie Press Lindblom
**Marjorie Press Lindblom***
**Adam T. Humann***
**Maura M. Klugman***
**Emily Lee***
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022–4611
Telephone: (212) 446–4800
Facsimile: (212) 446–4900
E-mail: marjorie.lindblom@kirkland.com
E-mail: adam.humann@kirkland.com
E-mail: maura.klugman@kirkland.com
E-mail: emily.lee@kirkland.com
*Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

Approved:


/s/ Neal R. Elliott, Jr.
**Neal R. Elliott, Jr., Bar No. 24084**
**Joanne Henig, Bar No. 06785**
**Douglas Cade, Bar No. 22747**
Louisiana Department of Health and Hospitals
628 N. Fourth Street
Bureau of Legal Services
P.O. Box 3836
Baton Rouge, LA 70821-3836
Telephone: (225) 342-1103
Facsimile: (225) 342-2232
*Attorneys for Defendants*.